

**VIA ECF**

REDACTED -- PUBLIC VERSION

Fish & Richardson P.C.
222 Delaware Avenue
17th Floor
P.O. Box 1114
Wilmington, DE 19899-1114

302 652 5070 main
302 652 0607 fax

May 14, 2021

Susan E. Morrison
Principal
morrison@fr.com
302 778 8434 direct

The Honorable Richard G. Andrews
U.S. District Court for the District of Delaware
U.S. Courthouse
844 North King Street
Wilmington, DE 19801

Re:   *GEMAK Trust v. Reckitt Benckiser LLC*, C.A. No. 18-1855 (RGA) (D. Del.)

Dear Judge Andrews:

This joint letter provides the Court with an update concerning the willfulness issues addressed during last week's summary judgment hearing.

**Plaintiff's Position**

In response to our inquires shortly after the hearing, counsel for Reckitt explained that, while a deposition of Ms. Roy is possible given the current situation in Europe, for reasons having to do with the pandemic and her family situation she is not comfortable traveling. Specifically, Reckitt explained: "While Ms. Roy would appear for the deposition if required, she is uncomfortable with doing so at this time."

In light of that, we offered the following compromise:

> In light of the circumstances, we think it only fair that Reckitt produce the development documents leading to the final formulation and launch of the Old Quantum and All-in-1 products and put up a knowledgeable 30(b)(6) witness on them for 90 minutes. We believe this information is relevant to willfulness and has not been obtained in this case due to the pandemic. If you agree with this approach, we can let the Court know the new plan with a joint letter once the dates are set for production and deposition.

Reckitt flatly rejected the compromise, and appears to be taking the position that it need do nothing more in response to the Court's guidance during the hearing. GEMAK's only recourse, it appears, is to seek the assistance of the Court.

fr.com



May 14, 2021
Page 2

Under the circumstances, GEMAK respectfully requests that the Court compel production of the requested development documents along with either (1) corporate testimony on those documents before the trial (presumably from a witness that Ms. Roy can help prepare) or (2) the personal deposition of Ms. Roy at some point after the trial, assuming liability is established.

We have focused our inquiry on the Old Quantum and All-in-1 products because they are the earliest developed of the accused products and because the development work on them occurred in Germany shortly after Reckitt has admitted it became aware of the asserted patent.  Thus, evidence that Reckitt knowingly designed their product formulations toward infringement would be most likely found there.  While GEMAK never moved to compel these documents, we never had (and still do not have) the full picture.  GEMAK questioned numerous Reckitt witnesses regarding the development work on these products during fact discovery, and none of them—including Reckitt's 30(b)(6) witness—could answer those questions. (*See* D.I. 197 at 4-5 (citing D.I. 203-9 at 157:22-181:6).)  The sole percipient Reckitt witness during this time period and about these documents is Ms. Pavlinka Roy.

**Defendant's Position**

While it is physically possible for Ms. Roy to travel to France at this time, doing so imposes inherent risks that Ms. Roy is not comfortable undertaking, and will require significant inconvenience in light of the status of France as a "high incidence area."[1]  As we previously explained to GEMAK, Ms. Roy is justified in being "uncomfortable" traveling to France for a 3-hour deposition that amounts to nothing more than a fishing expedition.  In particular, we explained:

> Ms. Roy is required to present evidence of a negative Covid test at the border, along with an explanation for the necessity of her travel into France.  Depending upon the determination of the border agent who considers her explanation, she may not be permitted to enter.  If she is permitted to enter, she may not have a place to stay.  Due to the pandemic, many hotels have closed.  At this point, she is looking into availability, but has not been able to determine whether a hotel option would be available to her.  However, this is only part of the equation.  Even if Ms. Roy is permitted to enter France, she still will have to return to Germany and comply with the requisite protocols.  She is not a German citizen.  As a result, she will need to register her travel to France prior to leaving, and have proof of that registration upon her return.  She also needs to have a negative Covid test before she returns, and once she does

---

[1] *See* https://www.rki.de/DE/Content/InfAZ/N/Neuartiges_Coronavirus/Risikogebiete_neu.html (last accessed May 13, 2021).



May 14, 2021
Page 3

> return, she will have to quarantine for ten days, as well as undergo additional testing. In addition to the regulatory/logistical issues associated with Ms. Roy traveling to France for a deposition at this time, there are personal issues.
>
> 

(Ex. A at 2 (J. Cook May 7 email to J. Goetz).) In fact, travel to France "is strongly discouraged" by the French government.[2] The risks and burden to Ms. Roy outweigh the limited, if any, relevance Ms. Roy has to the issue of willfulness.

Regarding GEMAK's "compromise," GEMAK is now using this issue to re-open discovery and request documents and 30(b)(6) testimony that it was fully capable of seeking over the past several years of litigation.[3] The defendant in this case—Reckitt Benckiser LLC—did not develop the Old Quantum and All-in-One products. Therefore, it is our understanding that it does not have any documents concerning those efforts. Nevertheless, in an effort to be reasonable and cooperative in response to the document requests GEMAK served during fact discovery, we asked for "development documents" concerning the accused products from other Reckitt entities, and included such documents in our previous productions. Additionally, GEMAK had the opportunity to question Reckitt's witnesses about those documents, including during the depositions of Reckitt's Rule 30(b)(6) designees and Ms. Roy's supervisor, Stuart Campbell, who is the R&D director at Reckitt's sister company, Reckitt Benckiser Global R&D GmbH. (See D.I. 214 at 3-5 (citing and detailing evidence GEMAK received during discovery, including documents and 30(b)(6) testimony on "[t]he design, research, and development of each Defendant Product").)

Further, as the Court has already noted, GEMAK "has no evidence of willfulness." (D.I. 232 at 2.) That is not surprising since no evidence exists, and Ms. Roy's deposition will do nothing to

---

[2] See https://www.diplomatie.gouv.fr/en/coming-to-france/coronavirus-advice-for-foreign-nationals-in-france (last accessed May 13, 2021).

[3] As the Court aptly noted when GEMAK raised the prospect of additional documents at the argument on summary judgment: "I don't understand why you're asking for documents. There was nothing during the pandemic that prevented you from getting whatever documents you wanted." (May 4 Tr. at 61:10-13.)



May 14, 2021
Page 4

change that—that is, there is not a shred of evidence that Reckitt or its parent company knew of the '514 patent or that Reckitt acted with a specific intent to infringe. Permitting GEMAK to prolong this fishing expedition will not change that fact.

Respectfully Submitted,

/s/ Susan E. Morrison

Susan E. Morrison (#4690)

cc: All Counsel of Record (via Email)